IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WALTER BYRON SEXTON,           §
    Petitioner,                §
                               §
v.                             §        Civil Action No. 4:20-CV-1036-O
                               §
BOBBY LUMPKIN, Director, TDCJ-CID,  §
    Respondent.                §

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Walter Byron Sexton, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

In January 2018, in Palo Pinto County, Texas, Case No. 16617, Petitioner was indicted on one count of possession of methamphetamine in an amount of less than one gram. Clerk's R. 8–9, ECF No. 12-9. The indictment also alleged that Petitioner had been previously convicted of two sequential felony convictions for sexual assault of a child and failure to register as a sex offender. *Id.* A jury found him guilty of the offense, Petitioner pleaded true to the enhancement allegations, and the jury assessed his punishment at 20 years' confinement and a $10,000 fine. *Id.* at 116. Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Electronic R., ECF No. 12-8. Petitioner also sought postconviction state habeas-corpus relief by filing a state habeas application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial

court and the court's independent review of the record. SHR[1] 4–19, ECF No. 12-24; Action Taken, 12-25.

At trial, the evidence showed that on the night of April 8, 2017, DPS trooper Juan Gutierrez discovered Petitioner's truck pulled to the side of a narrow road in rural Palo Pinto County, Texas, with his hazard lights on. The trooper stopped to conduct a "motorist assist" in the event the driver needed help. The trooper's interaction with Petitioner and his female passenger ultimately led to a search of the Petitioner's truck and the discovery of methamphetamine and other contraband. A video camera inside the trooper's car and a microphone attached to the trooper's clothing recorded the encounter and photographs of the methamphetamine and other contraband were taken, however prior to trial all the contraband, including the methamphetamine, were destroyed by the lab after analysis of the methamphetamine had been completed. It was stipulated at trial that the methamphetamine was not destroyed in bad faith and that "[t]here wasn't any effort to deprive [Petitioner] or his counsel the availability of any evidence or testing of that evidence."

## II. ISSUES

In four grounds for relief, Petitioner raises the following grounds for relief:

(1)   The appellate court abused its discretion by allowing appellate counsel to file a meritless brief;

(2)   Appellate counsel erred by "allowing the affirmative linking" of the methamphetamine to Petitioner;

(3)   Appellate counsel was not aware of Texas law in regards to "destruction of evidence"; and

(4)   Trial counsel "failed to suppress by legal motion the illegal[ly] obtained

---

[1]"SHR" refers to the record in Petitioner's state habeas proceeding in WR-91,497-01. Because the record is not paginated, the pagination in the ECF header is used.

evidence."

Pet. 6–7, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither successive nor barred by the statute of limitations and that the claims have been exhausted in state court. Resp't's Ans. 5, ECF No. 9.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F. 3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). It is the petitioner's

burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191–92 (2018). If there is no related state-court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its decision was contrary to or an objectively unreasonable application of that law. *See* 28 U.S.C.A. § 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006).

## V. DISCUSSION

### A. Abuse of Discretion

Under his first ground, Petitioner claims that the state appellate court abused its discretion by allowing his court-appointed appellate counsel to file a meritless brief—*i.e.,* an *Anders* brief. Pet. 6, ECF No. 1. According to Petitioner, he was constructively denied assistance of counsel on appeal because counsel filed a brief which did not assert any arguable error. Pet'r's Mem. 3–7, ECF No. 4.

As a general rule, indigent defendants have a right to counsel on a first appeal as of right, however "this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins,* 528 U.S. 259, 278

(2000). In *Anders v. California,* the Supreme Court recognized that appellate counsel could withdraw from representation without denying an appellant fair representation where certain safeguards were followed. 386 U.S. 738, 744 (1967). Specifically, under *Anders,* counsel must conduct a "conscientious examination" of the case and request permission to withdraw. *Id.* That request must be accompanied by a brief to the appellate court "referring to anything in the record that might arguably support the appeal." *Id.* The appellate court must then conduct a "full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Id.* The states are free to craft their own frameworks for ensuring adequate appellate review subject to these minimum requirements. *Smith,* 528 U.S. at 273.

Relying on *Anders* and the state law procedure, the appellate court addressed the issue as follows:

> Appellant's court-appointed counsel has filed a motion to withdraw. The motion is supported by a brief in which counsel professionally and conscientiously examines the record and applicable law and states that he has concluded that there are no arguable issues to present in this appeal. Counsel has provided Appellant with a copy of the brief, a copy of the motion to withdraw, an explanatory letter, a copy of the clerk's record, and a copy of the reporter's record. Counsel advised Appellant of his right to review the record and file a response to counsel's brief. Counsel also advised Appellant of his right to file a petition for discretionary review with the clerk of the Texas Court of Criminal Appeals seeking review by that court. See TEX. R. APP. P. 68. Court-appointed counsel has complied with the requirements of *Anders v. California,* 386 U.S. 738 (1967); *Kelly v. State,* 436 S.W.3d 313 (Tex. Crim. App. 2014); *In re Schulman,* 252 S.W.3d 403 (Tex. Crim. App. 2008); and *Stafford v. State,* 813 S.W.2d 503 (Tex. Crim. App. 1991).
>
> Despite being granted an extension of time in which to file his response, Appellant has not filed a pro se response to counsel's brief. In addressing an *Anders* brief and pro se response, a court of appeals may only determine (1) that the appeal is wholly frivolous and issue an opinion explaining that it has reviewed the record and finds no reversible error or (2) that arguable grounds for appeal exist and remand the cause to the trial court so that new counsel may be appointed to brief the issues. *Schulman,* 252 S.W.3d at 409; *Bledsoe v. State,* 178 S.W.3d 824, 826–27 (Tex. Crim.

App. 2005). Following the procedures outlined in *Anders* and *Schulman,* we have independently reviewed the record, and we agree that there are no arguable grounds for appeal.

Mem. Op. 1–2, ECF No. 12-1.

In this case, appellate counsel filed a sufficient brief as required by *Anders* after thorough review of the entire record. The 27-page *Anders* brief included a procedural history, statement of facts, consideration of specific issues with full analysis that included proper citation to the record and controlling authority, and a motion to withdraw and satisfied the additional requirements under state law. *Anders* Br., ECF No. 12-4. The appellate court also conducted a thorough, independent analysis of the record and found no issues of arguable merit. Therefore, the appellate court complied with all the requirements of *Anders* and state law and was reasonable in finding that counsel's brief was well within the requirements for effective representation. Because Petitioner fails to demonstrate that he was constructively denied counsel when his appellate attorney was granted leave to withdraw through an inadequate appellate procedure or that he was deprived of the ability to present any nonfrivolous issues on appeal, *see infra,* the appellate court did not abuse it discretion by permitting counsel to file an *Anders* brief and to withdraw. Petitioner is not entitled to relief under his first ground.

### B. Ineffective Assistance of Counsel

Under his second, third, and fourth grounds, Petitioner claims he received ineffective assistance of trial and appellate counsel. Pet. 6–7, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and, as previously noted, on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See also Styron v. Johnson,* 262 F.3d 438, 450

(5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record or was based on an unreasonable determination of the facts. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised his ineffective-assistance-of-counsel claims in his state habeas application and the state habeas judge, who also presided at trial, ordered counsel to submit affidavits addressing

the claims. SHR 49, ECF No. 12-24. Based on the record, Petitioner's application, and counsel's affidavits, the state habeas court expressly found that trial counsel was not ineffective and otherwise that there were no controverted, previously unresolved facts material to the legality of Petitioner's confinement. *Id.* at 56. In turn, the Texas Court of Criminal Appeals denied relief based on the trial court's findings. Action Taken, ECF No. 12-25. To the extent more particularized findings and conclusions of law were not made, this Court will infer fact findings consistent with the state court's disposition of Petitioner's ineffective-assistance claims and, absent any evidence that incorrect standards were applied, assume that the state courts applied the *Strickland* standard when considering the claims. Having done so, the state courts' application of *Strickland* was not objectively unreasonable.

Under his fourth ground, Petitioner claims that he received ineffective assistance of trial counsel because counsel "failed to suppress by legal motion the illegal[ly] obtained evidence" and to "cease the destruction of the evidence" as Petitioner requested. Pet. 7, ECF No. 1. To prevail on this claim, Petitioner must show that the motion to suppress would have been meritorious—*i.e.,* one that would have likely been granted, as opposed to one for which there is merely some good faith basis to pursue. *See Ward v. Dretke,* 420 F.3d 479, 488 (5th Cir. 2005).

Petitioner was represented at trial by court-appointed counsel Andrew Herreth, an experienced criminal defense lawyer. Counsel filed a motion to suppress, which the trial court continued at trial until after the state's witnesses testified. Clerk's R. 57–58, ECF No. 12-9; Reporter's R., vol. 9, 7–9, 116–24, ECF No. 12-18. After a hearing, the trial court denied the motion and entered the following findings of fact and conclusions of law on the issue (any spelling, grammatical, and/or punctuation errors are in the original):

# FINDINGS OF FACT

1.   Trooper Juan Gutierrez has been a certified peace officer in the State of Texas for approximately 5 years.

2.    Trooper Gutierrez has been employed as a trooper for the Texas Department of Public Safety for approximately 5 years.

3.   Trooper Gutierrez has previously testified in this Court on several occasions.

4.   The Court finds Trooper Gutierrez to be a credible witness.

5.   On April 8, 2018, at approximately 10 p.m., Trooper Gutierrez was patrolling on Oaks Crossing Road in Palo Pinto County, Texas.

6.   Trooper Gutierrez was a one-man unit on the evening of April 8, 2018.

7.   Oaks Crossing Road runs to the west from Highway 281 to the Brazos River.

8.   Oaks Crossing road is a very narrow, unlit 2-lane road with no improved shoulders.

9.   Oaks Crossing Road is a sparsely populated area.

10.  The area where Oaks Crossing Road nears the Brazos River is a high crime area with respect to stolen property, the use of illegal drugs, and the consumption of excessive alcohol.

11.  Trooper Gutierrez came upon a pickup pulled off the side of the road with its hazard lights flashing.

12.  Texas Department of Public Safety policy requires that troopers who come upon stranded motorists attempt to assist the motorists.

13.  The Defendant, Walter Byron Sexton, was standing behind the pickup as Trooper Gutierrez pulled up.

14.  As Trooper Gutierrez came to a stop, the Defendant quickly began moving back towards the driver's seat of his pickup truck.

15.  Trooper Gutierrez exited his patrol vehicle and began casually speaking to the Defendant, who turned around and began walking back towards the trooper.

16.     At the beginning of the encounter between Trooper Gutierrez and the Defendant, the trooper's subjective belief was that the Defendant needed assistance.

17.     Trooper Gutierrez observed the Defendant was unable to remain still, talking at a very fast rate, and unable to focus on a singular task or thought.

18.     Trooper Gutierrez has training and experience in recognizing persons who are high on controlled substances such as methamphetamine.

19.     Trooper Gutierrez determined the Defendant was under the influence of a controlled substance, such as methamphetamine, almost immediately after he began speaking to the Defendant.

20.     Trooper Gutierrez asked the Defendant to show his driver's license and the Defendant agreed.

21.     For officer safety reasons, Trooper Gutierrez accompanied the Defendant to the front of the truck to retrieve the Defendant's driver's license.

22.     As Trooper Gutierrez stood at the driver's side of the Defendant's truck, he saw a young woman in the front passenger seat that appeared to be passed out.

23.     According to Trooper Gutierrez, the woman did not appear to be comfortably sleeping, but instead looked like she had been thrown like a rag doll onto the seat.

24.     Trooper Gutierrez shone his flashlight onto the woman but there was no reaction by her.

25.     Trooper Gutierrez noticed that the Defendant's registration had expired in 2016 while he was standing at the front of the vehicle.

26.     The Defendant suddenly stated that he did not have his driver's license and quickly walked, with Trooper Gutierrez, back between the truck and the patrol vehicle.

27.     The Defendant provided Trooper Gutierrez with the Defendant's name and Texas Driver's License Number.

28.     The Defendant stated he and the female had been camping down by the river and had gone into Mineral Wells to visit the Defendant's family.

29. Trooper Gutierrez ran the Defendant and learned the Defendant was a convicted sex offender.

30. Trooper Gutierrez informed the Defendant he was going to check on the welfare of the unconscious female passenger.

31. As Trooper Gutierrez began walking to the passenger side of the truck, the Defendant began exclaiming "I didn't do it".

32. Trooper Gutierrez walked to the passenger side of the Defendant's truck and noticed the passenger side window was down.

33. Trooper Gutierrez again shone his flashlight into the face of the unconscious young female and again there was no response by her.

34. Trooper Gutierrez looked inside the open window and observed marihuana shake on the seat of the truck and on the legs of the female.[2]

35. Trooper Gutierrez repeatedly attempted to rouse the young female by talking to her loudly and shining his flashlight into her face.

36. Eventually, the female woke up and was very sluggish in her speech and movements.

37. Trooper Gutierrez was able to identify the female passenger by her Louisiana Driver's License as Heaven Casas.

38. Trooper Gutierrez asked Ms. Casas if the vehicle contained marihuana.

39. Ms. Casas replied that she did not know of any marihuana in the vehicle and that "just cause there's shake on my leg doesn't mean I'm lying."

40. Trooper Gutierrez pointed out the marihuana shake to Ms. Casas as she exited the vehicle and she flicked some of the marihuana shake onto the floorboard of the truck.

41. Ms. Casas told Trooper Gutierrez that she and the Defendant had gone to Mineral Wells to get some food and never mentioned visiting or seeing the Defendant's family.

---

[2]He described marihuana shake as "little bitty pieces of the green plant-like substance that is the marihuana." Reporter's R., vol. 9, 37, ECF No. 12-18.

42.     Trooper Gutierrez informed the Defendant that he was going to search the vehicle and the Defendant became verbally aggressive, began making fists and "squaring off" with the Trooper.

43.     For officer safety reasons, Trooper Gutierrez placed handcuffs on both the Defendant and Ms. Casas as he began to search the vehicle.

44.     In the rear passenger's side floorboard, Trooper Gutierrez located a small green bag containing the Defendant's Texas Driver's License, another state-issued identification card of the Defendant, the Defendant's credit card, and a small clear bag containing a white crystalline substance that Trooper Gutierrez believed to be, based upon his training and experience, methamphetamine.

45.     On the driver's side of the vehicle towards the dash, Trooper Gutierrez located a pipe consistent with the type to smoke methamphetamine.

46.     On the driver's side of the vehicle just under the windshield was a baby sock containing a small digital scale, rolling papers, and a bag of marihuana.

47.     At no time prior to the discovery of the suspected methamphetamine did Trooper Gutierrez ever display his weapon.

48.     At no time prior to the discovery of the suspected methamphetamine did Trooper Gutierrez use language or speak in a tone indicating that compliance with his requests might be compelled.

## CONCLUSIONS OF LAW

1.      The shoulder of Oaks Crossing Road is a public place.

2.      The Defendant voluntarily consented to meeting with and speaking to Trooper Gutierrez upon the trooper's arrival to the Defendant's location.

3.      All of the interaction between the Defendant and Trooper Gutierrez prior to the discovery of the marihuana shake was a consensual encounter.

4.      Trooper Gutierrez's subjective belief that that the Defendant was in need of help or assistance upon the trooper's arrival to the Defendant's location was reasonable given the totality of the circumstances.

5.      Trooper Gutierrez's subjective belief that the female in the passenger seat of the vehicle was in need of help or assistance when the trooper observed her

from the driver's side of the Defendant's truck was reasonable given the totality of the circumstances.

6.   Trooper Gutierrez's actions as to both the Defendant and Ms. Casas fall within the community caretaking doctrine of Texas law.

7.   Trooper Gutierrez had reasonable suspicion to detain the Defendant upon observing that the truck's registration expired in 2016.

8.   Operating a motor vehicle on a public road with an expired registration is a criminal offense in the State of Texas.

9.   Trooper Gutierrez observed the marihuana shake on the front seat of the pickup and on Ms. Casas from a location where he was legally entitled to be present.

10.  Trooper Gutierrez had probable cause to search the Defendant's truck based upon his viewing of the marihuana shake.

11.  Independent of his viewing of the marihuana shake, Trooper Gutierrez had probable cause to search the Defendant's truck based upon the totality of the circumstances.

Clerk's R. 138–41, ECF No. 12-9; Reporter's R., vol. 9, 116 –24, ECF No. 12-18.

In the state habeas proceeding, counsel responded to Petitioner's ineffective-assistance claims

in his affidavit as follows (any spelling, grammatical, and/or punctuation errors are in the original):

Applicant complains that defense counsel should have filed a motion to suppress the evidence obtained contemporaneous to his arrest for possession of a controlled substance. Applicant asserts that the evidence was obtained in violation of the United States Constitution and that such evidence was maliciously destroyed by the state in order to prevent the independent laboratory authentication of its status as a controlled substance. Applicant improperly cites rule 12 and rule 41 of the Federal Rules of Criminal Procedure in support of this claim. Lastly, Applicant contends that the only time to address a suppression issue is in the pre-trial phase.

Applicant is correct in his statement that I did not file the Motion to Suppress during the pre-trial phase that applicant desired. It was the professional judgement of counsel that the circumstances of this case did not warrant the filing of a motion to suppress because no real federal or state constitutional issues were present. Law enforcement personnel made contact with Applicant initially under the function of

community caretaking where subsequent observations of illegal narcotic contraband were identified in plain view. It was only upon law enforcement's plain view observations and Applicant's allegedly intoxicated behavior that led to the subsequent search and arrest. These facts led to the judgement of Counsel that it would be an improper use of the Court, State, and Applicant's time to file a frivolous motion to suppress. It was a strategic decision to bring up the facts and circumstances of how the evidence was obtained during the trial phase so that the jury could properly weigh the credibility of the evidence during its deliberations. Further, there was not an indication that anyone with the State acted in bad faith regarding the destruction of evidence in this case. Lastly, trial counsel brought up to the court, outside the presence of the jury, the stop and search issue Applicant complains of and the Court denied the suppression during trial. Trial counsel further asked for a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure, but this request was also denied.

*Id.* at 53–55.

Relying on the presumptive correctness of the trial court's express findings and legal conclusions that the search of the vehicle was proper and the stipulation of the parties that the destruction of the evidence was not done in bad faith, which was supported by testimony at trial, the state courts' application of *Strickland* is not objectively unreasonable under the doubly-deferential standard applied to such claims.

Although "[t]he Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant," *Ornelas v. United States,* 517 U.S. 690, 699 (1996), searches of automobiles are one class of situations to which the warrant requirement does not always apply. Two such exceptions are the community caretaking function of law enforcement and the automobile exception. *See Maryland v. Dyson,* 527 U.S. 465, 466 (1999); *Cady v. Dombrowski,* 413 U.S. 433, 441–42 (1973). The police do not need a warrant when engaged solely in community caretaking since "[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures." *South Dakota v. Opperman,* 428 U.S. 364, 370 n.5 (1976). As a result of their

community caretaker obligations, however law enforcement officers have "extensive, and often noncriminal contact with automobiles that will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Id.* at 443. Under the automobile exception, the police can search a vehicle without first obtaining a warrant if they have probable cause to believe the car contains contraband. *Dyson,* 527 U.S. at 467. Probable cause to search a vehicle exists when "the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe" a vehicle contains contraband or evidence of criminal activity. *United States v. Forrest,* 620 F.2d 446, 453 (5th Cir. 1980) (citing *Draper v. United States,* 358 U.S. 307, 313 (1959)). Thus, in analyzing whether an exception should apply, a court must determine whether the officer's actions were reasonable under the particular circumstances of the case.

Under the circumstances of this case, the DPS trooper did not act unreasonably. His initial interaction with Petitioner and his passenger was a legitimate exercise of the community caretaking function and his recognition of marihuana shake inside of the vehicle provided sufficient probable cause for him to enter and search the vehicle without a warrant. *See United States v. Ross,* 456 U.S. 798, 825 (1982). There is no evidence of a nonfrivolous basis on which counsel could have moved to suppress the evidence, nor is there evidence that such a motion would likely have been successful.

Nor does Petitioner demonstrate that he was prejudiced by destruction of the evidence. In the absence of bad faith on the part of the government, destruction of evidence alone prior to trial does not necessitate reversal of a conviction under state or federal law. *See Arizona v. Youngblood,* 488 U.S. 51, 58 (1988); *United States v. Gibson,* 963 F.2d 708, 711 (5th Cir. 1992); *Penix v. State,* 488 S.W.2d 86, 89 (Tex. Crim. App. 1972)*.* Nothing in the record indicates that Petitioner ever sought

an independent analysis of the methamphetamine. And, routinely, a jury is presented with photographs and testimony of witnesses who claim to have handled contraband. As the existence of the contraband in this case was established through photographs and the testimony of the DPS trooper and the state's expert, Petitioner was not prejudiced by the failure of trial counsel to object to the destruction of the evidence. Petitioner is not entitled to relief under his fourth ground.

Similarly, Petitioner fails to demonstrate deficient performance by counsel and prejudice on appeal. Under his second and third grounds, Petitioner claims that his appellate counsel was ineffective by "allowing the affirmative linking of the methamphetamine" to him and being unaware of Texas law regarding the destruction of evidence. Pet. 6–7, ECF No. 1. To demonstrate ineffective assistance of appellate counsel, Petitioner must demonstrate deficient performance and that but for counsel's deficient performance, he would have prevailed on appeal. However, appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments. See *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

Petitioner was represented on appeal by court-appointed counsel Eddie R. McClendon. McClendon responded to Petitioner's allegations in his affidavit as follows (any spelling, grammatical, and/or punctuation errors are in the original):

> I received the Clerk's Record on October 16,2018 and the Reporter's Record on February 4, 2019.
>
> Upon receiving the record in this case, I immediately began reading and

researching. I identified a number of legal issues that could be raised on appeal in Sexton's case. These included (1) whether evidence introduced at trial was sufficient to support the trial court's denial of Sexton's Motion to Suppress; (2) Whether there was an affirmative link between Sexton and the Methamphetamine that was found in Sexton's truck; (3) whether the trial court committed error in denying Sexton's requested jury instruction under Article 28.23 of the Code of Criminal Procedure; (4) whether the trial court committed error in denying Sexton's requested jury instruction on spoliation; (5) whether Andrew Herreth, Sexton's trial counsel, had rendered effective assistance of counsel; and (6) whether the punishment assessed was valid.

Once I identified the issues in Sexton's case that could be raised on appeal, I began to conduct legal research and analysis concerning each issue identified.

My review of the record, research, and analysis of the pertinent legal issues would not have supported a brief on the merits in this case. Because I have a duty to avoid filing frivolous appeals and personally prefer making intelligently honest arguments, I made the professional decision to file a brief meeting the standards set forth in *Anders v. California* and *High v. State.*

My decision to file an *Anders* brief was not made to prejudice my client, but to adhere to my professional duties to the Court.

SHR 51–52, ECF No. 12-24.

Relying on the presumptive correctness of the state courts' implied factual findings that the strength of the affirmative links was sufficient to establish Petitioner's knowing possession of the contraband and that the destruction of the evidence was not done in bad faith, the state courts' application of *Strickland* is not objectively unreasonable under the doubly-deferential standard applied to such claims.

Under the Texas Controlled Substances Act, "possession" means actual care, custody, control, or management. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West, Westlaw through 2019 Legis. Sess.). Under Texas law, presence or proximity, when combined with other evidence, either direct or circumstantial, may establish possession. *Evans v. State,* 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). When a defendant does not have exclusive possession of the place

where the contraband was found, a court examines the record to determine if there are any additional, independent facts that "affirmatively link" the defendant to the contraband. *See Poindexter v. State,* 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). The requirement of "affirmative links" is aimed at protecting innocent bystanders from conviction based solely on their proximity to someone else's contraband. *Id.*

Texas courts have recognized and described various possible "affirmative links" that are sufficient, either singly or in combination, to establish that a defendant possessed contraband. Some "affirmative links" include, but are not limited to: (1) the defendant's presence when a search is conducted; (2) the defendant's proximity to and accessibility of the contraband; (3) whether the defendant was under the influence of a controlled substance when arrested; (4) whether the defendant owned or had the right to possess the place where the contraband was discovered; (5) whether the defendant made incriminating statements when arrested; (6) whether the defendant made furtive gestures; (7) whether other contraband or drug paraphernalia were present; (8) whether the place where the drugs were found was enclosed; and (9) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans,* 202 S.W.3d at 162 n.2.

Here, Petitioner's behavior and demeanor indicated that he may be under the influence of a controlled substance and indicated a consciousness of guilt; the methamphetamine was found in Petitioner's truck in a pouch containing Petitioner's driver's license, ID, and credit card; marihuana shake was in plain view; and other contraband was found on the driver's side of the truck. Based on these affirmative links, it was reasonable for the jury to infer that Petitioner exercised actual care, custody, or management over the methamphetamine.

And, as discussed above, Petitioner's ineffective-assistance claim based on destruction of the

evidence has no basis under state or federal law. Petitioner is not entitled to relief under his second or third grounds.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 3rd day of May, 2021.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**